64 F.3d 664
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles E. HENRY; Edna M. Henry, Defendants-Appellants,
Mark Producing, Inc., Defendant.
 No. 94-3588.
 United States Court of Appeals, Sixth Circuit.
 Aug. 15, 1995.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 93-00105; George C. Smith, District Judge.
 S.D.Ohio
 REVERSED.
 Before: KENNEDY, JONES, and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Charles E. Henry and Edna M. Henry (the "Henrys") are appealing the district court's grant of summary judgment to Plaintiff United States Farmer's Home Administration ("FmHA") in an action filed to foreclose on the Henrys' mortgage with FmHA. The issue presented for review is whether the district court erred in its determination that the Henrys failed to submit evidence sufficient to give rise to a material issue of fact for trial.
 
 I.
 
 2
 The Henrys, jointly and severally, executed and delivered to FmHA certain promissory notes secured by real estate mortgages, security agreements and financing statements. The Henrys defaulted by failing to pay the promissory notes according to the their terms. FmHA accelerated the loans and declared the indebtedness due and payable.
 
 
 3
 FmHA provided several loan servicing options to the Henrys, including a Net Recovery Buy Out on their farmer program loan in the amount of $17,043. FmHA advised the Henrys that in order to complete a Net Recovery Buy Out, they were required by FmHA regulations to execute a Net Recovery Buy Out Recapture Agreement and a new real estate mortgage. 7 C.F.R. Sec. 1951.909(h)(3)(iv) (1990).[1] FmHA provided these documents to the Henrys through their attorney, Charles W. Ewing, on December 11, 1990. In response, the Henrys, through Ewing, tendered payment of the "write down" amount, $17,043, on December 14, 1990. On December 20, 1990, Ewing called FmHA and told Carlton O'Neil, an FmHA employee, that he (Ewing) had advanced the money to the Henerys, but he wanted to take a mortgage from the Henrys to secure his own loan, and he wanted to know if FmHA's mortgage would be subordinate to his mortgage. J.A. at 130. Ewing also told O'Neil that he had not yet obtained the Henrys' signatures on the required documents that FmHA gave to him. Id. FmHA allegedly attempted several times after December 11, 1990, to contact the Henrys and Ewing regarding the need for the Henrys to execute the required documents, but it claimed it was unsuccessful. See J.A. at 128-30. When the required papers still were not executed on December 21, 1990, FmHA returned the money that had been tendered to it on December 14, 1990. On January 29, 1993, FmHA initiated the civil foreclosure action upon which this appeal is based.
 
 
 4
 On April 29, 1994, the district court granted summary judgment to the United States. In its Motion for Summary Judgment, filed November 5, 1993, the government contended that the buy out was never completed because the Henrys failed to submit the necessary papers, the new real estate mortgage and a recapture agreement, to the FmHA. J.A. at 134. The court found that in response to the government's motion, the Henrys alleged that they had reached a settlement with the FmHA regarding the defaulted loans. J.A. at 133. The Henrys submitted a letter dated November 14, 1990, from an FmHA county supervisor, informing the Henrys that they could buy out their loans for $17,043. Id. The Henrys alleged that they made numerous efforts to contact the FmHA and take advantage of the buy out, but they claim they were unable to reach the FmHA because Carlton O'Neil, an employee at FmHA, did not return their phone calls. Id. The Henrys also informed the court that they tendered a check for $17,043 to the FmHA on December 14, 1990, but the check was later returned to them. Id. The district court concluded the following:
 
 
 5
 The Court concludes that the Henrys have failed to submit evidence sufficient to give rise to a genuine issue of material fact that a settlement was reached. The scant evidence they have submitted, when viewed in the light most favorable to them, at most arguably shows that a settlement was attempted. The Henrys have submitted absolutely no evidence tending to show that the alleged settlement was completed or consummated. That a check was tendered and refused does not indicate that a settlement was reached. Indeed, the return of the check can only imply that a settlement was not achieved.
 
 
 6
 J.A. at 136.
 
 
 7
 Ultimately, the Henrys endured foreclosure and a sheriff's sale of their property on July 20, 1994. This timely appeal followed the district court's grant of summary judgment to the government.
 
 II.
 
 8
 "We review a district court's grant of summary judgment de novo.... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor."' Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940 (1990)). "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.... 'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."' Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).
 
 
 9
 Before this court, the Henrys admit that the required documents, see 7 C.F.R. Sec. 1951.909(h)(3)(iv) (1990), were not completed, but they argue that they were prevented from executing the required documents because FmHA violated its own regulations, 7 C.F.R. Sec. 1951-S, Exh. C. (1990). Specifically, the Henrys contend that FmHA violated its own regulations by refusing to include a provision in the contested documents that would have given priority to the mortgage taken by the party who provided the buy out money to the Henrys.
 
 
 10
 Section 1951, Subpart S, Exhibit C of Title 7 of the Code of Federal Regulations is the Net Recovery Buy Out Recapture Agreement that parties, such as the Henrys, must execute to complete the buy out. It explicitly contains a provision whereby the Henrys would "agree to give FmHA a mortgage or deed of trust ... which will be subordinate to any purchase money security instrument which does not exceed the fair market value of the property to enable the borrower to purchase the property from FmHA at the net recovery value." 7 C.F.R. Sec. 1951-S, Exh. C (1990). This language was contained in the buy out agreement that FmHA prepared and gave to the Henrys through Ewing for execution. J.A. at 127. Although this language appears to be the very sort of provision that the Henrys claim FmHA refused to include, the Henrys clarified at oral argument that the language in the buy out agreement was deficient because it did not specify the party who held the purchase money security interest. J.A. at 127; 7 C.F.R. Sec. 1951-S, Exh. C. Moreover, the buy out agreement only provided a place for the Henrys to affix their signature; it did not require the signature of FmHA. See J.A. at 127; 7 C.F.R. Sec. 1951-S, Exh. C. Because of these alleged deficiencies, the Henrys, through Ewing, alleged at oral argument that the buy out agreement would not have been enforceable against FmHA and that Ewing's mortgage would not have had priority status over FmHA's mortgage. This result, according to the Henrys, contravened the obvious import of the language in Exhibit C and justified their unwillingness to execute the proffered documents.
 
 
 11
 The Henrys allege that despite numerous requests for the FmHA to complete the correct documentation, FmHA never corrected or completed the buy out agreement. The Henrys argue that FmHA cannot simply ignore its own regulations and put a borrower in a position where there is nothing the borrower can do to finalize the Net Recovery Buy Out and then foreclose against the borrowers.
 
 
 12
 At this point, we note that the Henrys did raise this contention, albeit very abbreviated, before the district court in their Memorandum Contra Plaintiff, United States of America's Motion for Summary Judgment. J.A. at 114. The pertinent language reads as follows:
 
 
 13
 In conclusion a settlement was reached. Charles and Edna Henry have done everything they are required to do. FmHA has merely drug its feet and has sought to ignore its settlement and lawful obligation under 7 C.F.R. part 1951, sub-part S.
 
 
 14
 Id. (emphasis added). The district court, however, made no reference to the latter allegation in its opinion and order. The district court granted FmHA's Motion for Summary Judgment based on the finding that FmHA and the Henrys did not reach a settlement because the Henrys did not execute the required documents. The court never once considered that FmHA's violation of its own regulations may have prevented the Henrys from executing the documents. The district court's silence was understandable, though, as the Henrys' contention was not a model of clarity. Nevertheless, we find that the Henrys' brief reference to FmHA's alleged violation of its lawful obligation under 7 C.F.R. Sec. 1951-S was sufficient to preserve the argument for appellate review. See Wayne County Neighborhood Legal Servs. v. National Union Fire Ins. Co., 971 F.2d 1, 3 (6th Cir. 1992) (holding argument preserved for appellate review and summary judgment improperly granted below where plaintiff was unprepared at summary judgment phase of proceedings, failed to submit a brief in opposition to defendant's motion for summary judgment, and did appear and argue against defendant's motion at summary judgment hearing, but only pointed out the provisions of the insurance contract on which it based its argument on appeal).
 
 
 15
 More disturbing, however, is FmHA's response to the Henrys' argument on appeal. Although the Henrys clearly argued on appeal that FmHA's violation of its own regulations prevented them from consummating the buy out, FmHA completely avoided the issue and simply reiterated the reasoning and conclusions of the district court. Because FmHA, who was the movant for summary judgment, did not controvert the Henrys' allegation either below or on appeal, we find that a material issue of fact remains to be resolved.
 
 III.
 
 16
 Based on the foregoing analysis, we REVERSE the decision of the district court and REMAND the case for further consideration in light of this opinion.
 
 
 17
 KENNEDY Circuit Judge, dissenting.
 
 
 18
 Because I agree with the District Court that the Henrys have failed to submit sufficient evidence to give rise to a genuine issue of material fact as to whether a settlement was reached, I respectfully dissent.
 
 
 19
 The fair market value of defendants' property was $56,050. The offered settlement required defendants to agree that if they sold the property within two years for more than the buy out amount of $17,043, FmHA would be entitled to the excess over $17,043 up to $56,050. If defendants chose to accept this offer, they were required to execute a Net Recovery Buy Out Recapture Agreement and a new mortgage. The record discloses that the FmHA gave both these documents to defendants' counsel so that he could obtain defendants' signatures. There is no evidence defendants signed either document, and they do not claim that either one was tendered to the government. The only thing tendered to the government was a check for the net recovery amount. Defendants' signatures on both documents were essential to the completion of the settlement.
 
 
 20
 In their answer to the government's foreclosure action, defendants asserted two affirmative defenses: that defendants had reached a settlement agreement with the government and that the government was estopped from foreclosing on the property. The answer is silent, however, as to what facts constitute the estoppel. In their response to the government's motion for summary judgment, defendants reiterated that they had reached a settlement with the government and stated that they had tendered payment in full. The brief also declares that, after the government returned the Henrys' check, "[n]umerous requests and discussions ensued between counsel for Defendants and Carlton O'Neil, the FmHA county supervisor. Each time counsel for Defendants requested a conclusion of the settlement." The brief does not elaborate any further on why the settlement was not consummated.
 
 
 21
 The record does, however, contain the December 21, 1990, letter from the FmHA returning the tendered check. That letter indicates that the money could not be accepted until defendants signed and returned the new real estate mortgage and the recapture agreement. Defendants do not assert that the government refused to accept their executed documents. Rather, in both their appellate brief and at oral argument, defendants' counsel asserted that defendants did not execute the documents because the documents did not properly reflect the terms of the tentative settlement and the requirements of the regulations. At oral argument, defendants' counsel concentrated his argument on the Net Recovery agreement. As the majority indicates, defense counsel's primary objections to this document were that it was not signed by the FmHA and it did not specify who held the purchase money security interest. This was not, however, the only document which defendants were asked to execute. Defendants were also given a new mortgage whose terms would be controlling when the old mortgage was discharged pursuant to the recapture program. There is no assertion that this mortgage plus the discharge of the old mortgage was insufficient to protect the contemplated purchase money security interest. The property was also subject to a $27,753.34 rural housing loan mortgage which was not affected by the buy out settlement. The record does not reflect whether that mortgage would be superior to the purchase money mortgage. That mortgage, however, is not part of the buy out program and is unaffected by the settlement.
 
 
 22
 Defendants have simply not raised an issue of fact as to whether either waiver or estoppel exists here. Accordingly, I would affirm the judgment of the District Court.
 
 
 
 [1]
 The regulation states the following:
 (iv) Prior to the buy out at net recovery value, the borrower must, as a condition of the sale, enter into written agreement by executing Exhibit C, "Net Recovery Buyout Recapture Agreement," of this subpart. The County Supervisor will process the net recovery buyout payment and will input the information to establish the recapture receivable account via the multi-function workstation. A new mortgage or deed of trust will be taken for the best lien obtainable. The new mortgage or deed of trust will describe Exhibit C and enter the amount due under the net recovery buyout recapture agreement. The new mortgage or deed of trust will secure repayment of the net recovery buyout recapture agreement. The old mortgage or deed of trust will be released in accordance with Sec. 1951.909(k) of this subpart.
 
 
 [7]
 C.F.R. Sec. 1951.909(h)(3)(iv) (1990)